FILED
U.S. DISTRICT COURT

2006 JUL -5  A 10: 54

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

# In the United States District Court
# for the District of Utah, Central Division

| | |
|---|---|
| DEANNA C. ROYBAL, <br><br> Plaintiff, <br><br> vs. <br><br> JO ANNE B. BARNHART, Commissioner of Social Security, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:05cv002 JTG |

This case comes before the Court after the plaintiff sought judicial review of the actions of the Commissioner of Social Security in denying the plaintiff's disability benefits. The plaintiff alleges that the Administrative Law Judge (ALJ) erred in his denial of benefits on two counts. First, the plaintiff alleges that the ALJ failed to provide specific reasons for the weight assigned to the plaintiff's treating physicians opinions. Second, the plaintiff alleges that the ALJ failed to properly assess the plaintiff's credibility. This Court finds no merit to either of the plaintiff's arguments. This Court further finds that the ALJ's opinion is well supported by the evidence in the record as a whole. The opinion of the ALJ is therefore **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff, Deanna Roybal, filed an application for Disability Insurance Benefits on April 5, 2002. Ms. Roybal was initially denied benefits on June 21, 2002, and also upon reconsideration on January 23, 2003. Ms. Roybal is claiming disability beginning January 1,

2002. A hearing before the Administrative Law Judge (ALJ) was held on February 23, 2004 in which Jay Barnes represented the plaintiff. Plaintiff, as well as a vocational expert testified at the hearing. The government was not represented at the hearing. The ALJ, Robin Henrie, found plaintiff not disabled in an opinion dated May 12, 2004. In response to plaintiff's timely request for review by the Appeals Council, that body upheld the ALJ's determination, finding no basis for disturbing the ALJ's final administrative decision. Accordingly, the ALJ's decision is the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§404.981, 416.1481 (2005). Plaintiff brought this action appealing the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), which provides for judicial review of the defendant's final determination.

## II. FACTUAL BACKGROUND

Plaintiff was 34 years old on the date of the ALJ's decision. She has a high school diploma, one year of college education, and past relevant work experience as a general office clerk. Plaintiff quit working before her mother's death in January 2002 in order to assist her mother. Shortly thereafter, she began treatment for depression. Plaintiff alleges that her disability is due to severe depression and anxiety. In February 2002, plaintiff received treatment from Dora Norton, M.D., and was diagnosed with major depressive disorder and anxiety. Plaintiff claims that she is unable to function or work because of this condition.

## III. THE FIVE STEP SEQUENTIAL PROCESS

There is a five step process to determine whether a claimant is disabled pursuant to 20 C.F.R. §416.920:

2

1)     If the claimant is performing substantial gainful work she is not disabled.

2)     If the claimant is not performing substantial gainful work, her impairment(s) must be severe before she can be found to be disabled.

3)     If claimant is not performing substantial gainful work and has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, 20 C.F.R. §404, the claimant is presumed disabled without further inquiry.

4)     If claimant's impairment(s) does not prevent her from doing her past relevant work, she is not disabled.

5)     Even if the claimant's impairment(s) prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

At step one the ALJ found that plaintiff had not engaged in substantial gainful activity since her onset date.

At step two the ALJ found that medical evidence established that severe impairments had been diagnosed and treated from the alleged onset date and that "such impairments are of sufficient duration to more than minimally limit plaintiff's ability to perform basic work activities." (R. at 13).

At step three the ALJ reviewed the medical evidence in the record and concluded that plaintiff has severe impairments, but not severe enough to be listed under the regulations. The ALJ found that plaintiff's degree of limitation in activities of daily living is mild. (R. at 14). The ALJ further found that plaintiff has moderate difficulty in maintaining social contact, moderate limitations of concentration, persistence and pace, and has exhibited only two episodes of decompensation for extended durations. (*Id*).

At step four in order to determine whether plaintiff could perform any of her previous employment the ALJ considered additional medical evidence. The ALJ noted treatment and diagnosis from Dora Norton, M.D. Dr. Norton diagnosed plaintiff as suffering major depressive disorder, prescribed the anti-depressant Celexa, recommended further treatment, and gave plaintiff a "good" prognosis. (R. at 15). The ALJ further considered treatment and diagnosis from David Ericksen, Ph.D. Dr. Ericksen diagnosed plaintiff with a recurrent major depressive disorder, panic disorder, and agoraphobia, and opined that "her ability to relate to others was impaired due to her anxiety, shyness and tendency to withdraw from social contact, dependency needs and easily triggered feelings of rejection and anger." (R. at 16). The ALJ further considered evidence of a suicide attempt in which plaintiff cut her wrists but later called paramedics and was treated with simple band-aids. (*Id*).

At the step four determination the ALJ also considered plaintiff's own testimony and credibility. The ALJ noted that despite plaintiff's struggling with chronic depression and anxiety "it is clear that she is not as functionally limited as alleged generally." (*Id*). The ALJ noted that plaintiff is capable of attending to her activities of daily living without a problem, that she goes shopping once a month, and is able to rent videos from the library once a week.

In assessing plaintiff's credibility the ALJ found inconsistencies in plaintiff's testimony that negated a conclusion of total disability. The ALJ noted that plaintiff was able to function on her own when properly motivated, such as having to transport herself occasionally to medical appointments, although she preferred to go with her boyfriend. The ALJ also noted an instance in which she traveled with her boyfriend to North Carolina and then returned home to

4

Utah alone on a bus. When considering plaintiff's testimony in conjunction with the objective medical testimony the ALJ found that plaintiff was not totally disabled, but was nevertheless unable to return to her previous work due to her impairments. (R. at 17-18). The ALJ found that despite her impairments plaintiff had the residual functional capacity to perform all exertional and non-exertional aspects of unskilled work, except that work would be limited to a low production rate, no working with the general public, minimal supervision and interaction, minimal work setting changes, and low concentration and memorization levels. (R. at 18). In reaching that conclusion the ALJ relied on the opinions of examining state agency medical consultants. (*Id*). The ALJ concluded at step four that plaintiff was unable to return to her previous work as a general office clerk.

The ALJ proceeded to step five where the burden shifts to the government to show that there is other work that exists in significant numbers in the national economy that plaintiff can perform. At this step the ALJ relied on the testimony of the vocational expert who stated that given plaintiff's residual functional capacity, education background, and past relevant work she was capable of performing the job of a semi-conductor bonder, house sitter, small parts assembler, and laundry folder and therefore was not disabled. (R. at 19).

### IV. STANDARD OF REVIEW

The Court's review of the ALJ's decision is limited to determining whether the "factual findings are supported by substantial evidence in the record viewed as a whole" and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services*, 26 F. 3d. 1027, 1028 (10th Cir. 1994). Substantial evidence is "more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may consider the specific rules of law that the ALJ must follow in "'weighing particular types of evidence,' but [the court] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Joyce v. Barnhart*, 2004 WL 214478 (10th Cir. 2004)(unpublished opinion).

### V. ANALYSIS

A. Assessment and Determination of Weight to be Given to Treating Physicians' Opinions.

Plaintiff's Arguments

Plaintiff's first argument for remand is that the ALJ failed to provide the specific reasons for the weight he assigned to Ms. Roybal's treating physicians' opinions. Plaintiff argues that *Watkins v. Barnhart*, 350 F. 3d. 1297, 1301 (10th Cir. 2003), requires the ALJ to enunciate specific reasons why the opinions of plaintiff's treating physicians received a specific amount of weight in the ALJ's opinion, and that failure to list those reasons amounts to an error of law demanding remand. (Pl. Br. at 6-9). In this regard, Plaintiff argues that the record shows that the ALJ did not consider the opinions of Doctors Norton, Ahmed, and Lasley. Dr. Norton diagnosed plaintiff with depression, and emphasized that plaintiff could not go out without her friend for support. (R. at 109-110). Dr. Ahmed diagnosed plaintiff with major depression and panic disorder, and psychomotor retardation and slow thought process. (R. at 179-180). Ms. Lasely, a Licensed Clinical Social Worker, also diagnosed plaintiff's symptoms to be consistent with depression. (R. at 180-181). Finally, plaintiff contends that the ALJ "failed to even acknowledge that the limitations assessed by these providers would likely preclude work," and

did not state what weight he gave any of these providers. (Pl. Br. at 9). These failures, according to plaintiff, constitute a clear error of law meriting remand.

### ALJ's Consideration of Treating Physicians' Opinions

Contrary to the assertions of plaintiff, the record shows that the ALJ considered and gave weight to Dr. Norton's and Dr. Ericksen's medical records specifically when he concluded that plaintiff did in fact suffer from a substantial disability. (R. at 15-16). The ALJ further specifically acknowledged the treating physicians' opinions relative to plaintiff's limitations when he found that plaintiff's work must be limited to low stress, low supervision work, with limited exposure to the general public, and low requirements of concentration. (R. at 17-18). Manifestly, the ALJ relied on the opinions of plaintiff's treating physicians to conclude that plaintiff is substantially disabled. However, in his Decision, the ALJ did not rely solely on the opinions of plaintiff's treating physicians. The ALJ considered the evidence put forward by plaintiff herself that contradicted a finding of severe disability. Although two physicians had treated plaintiff for agoraphobia, the ALJ noted that plaintiff's travel from North Carolina by bus and her capacity to visit her doctors by herself was inconsistent with severe disability. Also the ALJ noted in his Decision that none of plaintiff's treating physicians had concluded that the plaintiff was unable to work. (R. at 17). Thus, the ALJ did not give the treating doctors' opinions controlling weight because he found them to be inconsistent with substantial evidence in the record, including the testimony of the plaintiff. Additionally, the ALJ assigned substantial weight to the testimony of examining state agency physicians and a vocational expert in making his decision.

*The Watkins* case does require the ALJ to determine the weight to be given to treating physicians' opinion in making his Decision. *Watkins*, 350 F.3d. at 1301. In doing this the ALJ must first decide whether the physician should be given "controlling" weight. This is done by following a two-step inquiry: First, the ALJ determines whether the physician's testimony is "well-supported" by acceptable clinical and laboratory diagnostic techniques. Second, the ALJ must confirm that the opinion is consistent with other substantial evidence in the record. *Id.* at 1300. *Watkins* further makes clear that even if a treating physician is not entitled to controlling weight, his or her opinion must still receive deference.

*Watkins* requires the ALJ to enunciate the weight she gave to the opinion of plaintiff's treating physicians, mandating that the ALJ's Decision must be sufficiently specific to make clear to subsequent reviewers that the ALJ gave appropriate weight to the treating physicians' medical opinions. 350 F.3d. at1300. It is true in the case at bar that the ALJ never stated in his opinion that he gives "controlling" or "deferential" weight to the treating physicians or to any one physician. However, it is sufficiently clear in the record and by reason of the ALJ's discussion, that he gave deferential weight to plaintiff's treating physicians.

It is clear from the foregoing that the ALJ gave appropriate weight to the opinions of the treating physicians. It is also clear that there was substantial evidence in the record, other than the treating physicians' opinions, that was inconsistent with a finding of controlling weight to be given to them. On balance, substantial evidence in the record supports the ALJ's final determination of disability, but not total disability. A doctor's opinion that a plaintiff is disabled is not dispositive, and the final determination is reserved to the ALJ. *Castellano*, 26 F. 3d at

1029.

B. <u>Assessment of plaintiff's credibility.</u>

Plaintiff contends in her brief that the ALJ failed to properly assess her credibility. The ALJ found that plaintiff's testimony and credibility were in doubt and that her testimony was inconsistent with a finding of total disability. Specifically, the ALJ noted plaintiff's ability to visit her doctor by herself, her ability to prepare meals and perform household chores, her monthly visits to the supermarket with the assistance of her boyfriend, her weekly rental of videos from the library with the assistance of her friend, and her travel from North Carolina to Utah by herself on a bus. (R. at 17). The ALJ found that this evidence was inconsistent with total disability due to depression and agoraphobia.

Plaintiff contends that the ALJ's findings on this score were "rife with factual errors." (Pl. Br. at 10). Plaintiff contends that as with her ability to shop outside of the home with the assistance of her friend and her ability to perform household chores that these tasks are not inconsistent with mental depression and agoraphobia. She argues that she is simply unable to function outside of her home alone, and that visiting the grocery store with her boyfriend does not contradict this.

Plaintiff disputes the North Carolina trip as being substantial evidence of disabling anxiety or depression. Plaintiff contends that the trip was so stressful on her that she had to leave North Carolina early (her boyfriend stayed longer) and return by herself because the stress was too much. Plaintiff states that in this, and other activities set forth above, the ALJ

9

mistakenly evaluated the significance and weight of this evidence, and insists that the case be remanded.

In *Kepler v Chater*, 68 F. 3d 387, 391 (10th Cir. 1995), the court stated that "credibility determinations are peculiarly the province of the finder of fact, and we will not upset determinations when supported by substantial evidence." In the case at bar, the evidence, as a whole, lends clear support to the ALJ's finding. The ALJ found that plaintiff's ability to visit her doctor, to travel to Utah from North Carolina on a bus, and to go grocery shopping with a friend when she needed food, among other things, contradict a finding of total disability.

The ALJ reasoned that plaintiff's ability to function outside of the home was motivated by her necessity. In this regard, the ALJ found that "plaintiff is able to be quite functional when she exerts the effort required by the legal standards that must be followed in this case, i.e. what is the most she can do despite her impairments." (R. at 17). In other words, the ALJ found that plaintiff is capable of activity outside of the home when she wants to be. The ALJ made clear the reasons why he did not find plaintiff's testimony to be credible or supportive enough to find her to be totally disabled. The ALJ stated that he "does not find the claimant's functional allegations, and conclusion of total disability, to be reasonably consistent with the objective medical evidence and non-medical evidence, when considered as a whole." (R. at 17). The ALJ's decision is thorough in laying out the details of contradictory testimony that supports the ALJ's determination that plaintiff's testimony was not wholly credible. There is no doubt that the ALJ's analysis of plaintiff's credibility is supported by substantial evidence.

Based upon the foregoing, the determination by the ALJ that plaintiff is not

wholly disabled is supported by substantial evidence. Accordingly, it is hereby

ORDERED, that the Decision of the ALJ as affirmed by the Decision of the Appeals Council is **AFFIRMED**.

DATED this 30th day of June, 2006.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE